Brian J. McGoldrick #169104
Ronald M. Toigo #174358
Pacific Law Center, P.C.
4225 Executive Square, Suite 1550
La Jolla, Ca 92037

Attorneys for Randolph F. & Gloria Sanchez, Debtors

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 06-03012-H13 |
| | ) |
| Randolph F. & Gloria Sanchez | ) Chapter 13 |
| | ) |
| Debtors. | ) RS No. JMS-1 |
| | ) |
| | ) **DEBTOR'S NOTICE AND MOTION TO** |
| | ) **RECONSIDER RELIEF FROM STAY** |
| | ) **GRANTED TO CHASE HOME FINANCE,** |
| | ) **LLC AS SERVICING AGENT TO WELLS** |
| | ) **FARGO BANK, N.A.; MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES** |
| | ) |
| | ) 11 U.S.C. §§ 362 |
| | ) |
| | ) Date:        July 10, 2007 |
| | ) Time:        10:00 a.m. |
| | ) Dept:        4 |
| | ) Judge:       Hon. Peter W. Bowie |
| | ) |

TO:    Chase Home Finance, LLC          Wells Fargo Bank, N.A.
       c/o John M. Sorich, Esq.          c/o Randall D. Naiman, Esq.
       Alvarado, Shapiro & Wilson, LLP   Naiman Law Group, PC
       4 Park Plaza, Suite 1230          4660 La Jolla Village Dr, Suite 500
       Irvine, CA 92614                  San Diego, Ca 92122

        Please take notice that on July 10, 2007 at 10:00 a.m. in Department 4, Room 328 of

the Jacob Weinberger United States Courthouse, located at 325 West "F" Street, San Diego,

California 92101-6991, there will be a hearing regarding the Motion of Randolph F. & Gloria

Sanchez (the "Sanchezes" or "Debtors"), for an order vacating the relief from stay granted to

Chase Home Finance, LLC as servicing agent to Wells Fargo Bank, N.A., as Trustee ("WFB") on March 12, 2007 pursuant to 11 U.S.C. § 362, Federal Rules of Bankruptcy Procedure ("FRBP") 7055 and 9014, Federal Rules of Civil Procedure ("FRCP") 55 and 60 and Local Rule ("LR") 9014.

The basis for the Motion is that:

1.    WFB holds a first deed of trust on the Sanchezes' residential real property located at 572 Lee Rd, Imperial, Ca 92251 (the "Real Property").

2.    On or about October 3, 2006, the Sanchezes sought the advice of their counsel, Pedro S. Bonilla ("Mr Bonilla"), regarding whether and when to make the mortgage payment to WFB.  Mr Bonilla's paralegal, Mike Solorio ("Mr Solorio") told them not to make any mortgage payments until it was confirmed that the Trustee would not convert the case to a Chapter 7.

3.    As a result of this erroneous legal advice, the Sanchezes became delinquent on their post-petition mortgage payments.  On or about February 5, 2007, WFB filed a relief from stay motion (the "RS Motion") to proceed with a previously filed notice of default (which notice was filed pre-petition).

4.    The Sanchezes asked Mr Bonilla for advice as to how to deal with the RS Motion.  Mr Bonilla advised them that there was no defense because they had fallen too far behind on the mortgage payments.  As a result of such erroneous legal advice, the Sanchezes did not oppose the RS Motion.

5.    On or about March 12, 2007, this Court entered an order granting WFB relief from stay.

6.    However, the Sanchezes should have been given better legal advice and should not now be held responsible for the Real Property reverting to WFB.  Moreover, WFB has an

"equity cushion" in the Real Property which protects its interest.  Further, the Sanchezes' confirmed plan provides for a cure of any pre-petition arrears and current payments on WFB's loan.

Any opposition or other response to this motion must be served upon the undersigned and the original and one copy of such papers with proof of service must be filed with the Clerk of the U.S. Bankruptcy Court at 325 West "F" Street, San Diego, California 92101-6991, NOT LATER THAN FOURTEEN (14)[1] DAYS FROM THE DATE OF SERVICE.  Failure to file an opposition will be deemed a consent to the motion.  This motion is supported by this notice and motion, a memorandum of points and authorities, the declarations of        , and all pleadings  on file in this case together with all oral and documentary evidence submitted at time of hearing.

WHEREFORE, the Sanchezes move for an order vacating the previous order granting WFB relief from stay pursuant to § 362, FRBP 7055, and 9014, FRCP 55 and 60 and LR 9014.

## REQUEST FOR JUDICIAL NOTICE

The Sanchezes request judicial notice of all documents filed in support of and in opposition to the RS Motion.  Said documents which are filed in the main bankruptcy case have docket numbers 32 and 33.  In addition, the Sanchezes request judicial notice of the pre confirmation modifications of their plan and the order confirming their plan, docket numbers 27, 29, and 30, respectively.

/ / /

/ / /

---

[1]If you were served electronically or by mail, you have three (3) additional days to take the above-stated actions.

In re Sanchez, Case No. 06-03012
Mot Vacate Stay                                    3                          MOT-RECONSIDER RFS-WFB.wpd

## MEMORANDUM OF POINTS AND AUTHORITIES[2]

### BACKGROUND

On or about October 6, 2006, the Sanchezes filed their Chapter 13 bankruptcy petition. WFB was named in Schedule D of that petition as a secured creditor holding a security interest in the Real Property.  Prior to the petition, WFB published its notice of sale pursuant to its trust deed.

On or about December 13, 2006, this Court confirmed the Sanchezes' Chapter 13 plan.  At that hearing, the Sanchezes asked Mr Bonilla whether they should make their mortgage payments and he advised them to send the payments to WFB.  The Sanchezes immediately sent their December mortgage payment.  However, WFB returned the payment to them on or about January 4, 2007.  The Sanchezes spoke to Mr Solorio at that time and he told them he would contact WFB to resolve the issues.  Mr Solorio then informed them that they should continue to make the mortgage payments.  The Sanchezes interpreted this as a resolution of the issues and that WFB would now accept payments.

On or about February 5, 2007, WFB filed its RS Motion.  The Sanchezes spoke to Mr Solorio and he informed them that they had no grounds to oppose the RS Motion because they had not made the post-petition mortgage payments. The Sanchezes then tried to obtain a refinancing to cure the arrears.  However, they could not obtain enough money to pay all the arrears, including the post-petition arrears.  On or about March 12, 2007, this Court entered its order granting WFB relief from stay on its unopposed motion.  WFB attempted to sell the Real Property but could not do so, so the Real Property reverted to them pursuant to their trust deed.

---

[2] LR 9006-2 does not apply because the P&A section is actually 8 pages long, not 10.

1

On or about May 16, 2007, WFB sent the Sanchezes a notice to vacate the Real

2

Property.  The Sanchezes sought legal advice from Pacific Law Center, P.C. ("PLC").  PLC

3

prepared the necessary substitution of counsel and sent it to Mr Bonilla on or about May 31,

4

5

2007.  The Sanchezes have moved out of the Real Property in compliance with the notice to

6

vacate.

7

### ARGUMENT

8

**A. THE PRIOR RELIEF FROM STAY ORDER SHOULD BE VACATED BECAUSE WFB'S**

9

**INTEREST WAS ADEQUATELY PROTECTED AND THE CONFIRMED PLAN PROVIDES**
**FOR A CURE OF ALL ARREARS AND CONTINUED CURRENT MORTGAGE PAYMENTS**

10

One of the fundamental purposes of bankruptcy is to avoid a "race of creditors." *See,*

11

*e.g., Union Bank v. Wolas*, 502 U.S. 151, 161 (1991) (the purpose of the preference section

12

to prevent "dismemberment" of the debtor); *In re Medicar Ambulance Co., Inc.*, 166 B.R. 918,

13

14

924 (N.D. Cal. 1994) (zealous creditors may "dismember" a debtor who would be worth more

15

to them as a collective whole); *Conner v. Long*, 104 U.S. 228, 232 (1881) ("It was,

16

undoubtedly, deemed an essential element in any efficient system, the main purpose of which

17

was to secure to all the creditors of the bankrupt an equal participation in his effects, not only

18

19

as against his fraudulent and collusive dispositions, but also as against the zealous

20

competition among creditors, in their heedless race of diligence, to obtain priority.").

21

In the case at bar, the Court granted WFB relief from stay in an order entered on

22

March 12, 2007.  However, prior to the relief from stay order, this Court confirmed the

23

Sanchezes Chapter 13 plan which provides for a cure of the arrears and for continued

24

payments of all current mortgage payments to **all secured creditors**, including WFB.  If WFB

25

is allowed to proceed with the sale of the Real Property, the junior lienholder, MXL Inc., will

26

receive **no payments** on its lien.  From these facts, it is clearly in the best interests of **all**

27

28

creditors, not just WFB, to allow the Sanchezes to complete their confirmed plan.

1

2       Further, WFB's RS Motion listed the Real Property's worth as $500,00 and its secured

3   loan's balance as approximately $328,000.  The RS Motion also lists the MXL Inc lien as

4   approximately $35,000.  Thus, the total encumbrance is approximately $363,000.  Therefore,

5   as to WFB, its lien is adequately protected.   The difference, or "equity cushion," is

6   approximately $137,000.  Even if one were to include the arrears of about $36,000 (provided

7   for in the plan), the "equity cushion" is still approximately $101,000 and WFB's lien remains

8   adequately protected.  Therefore, WFB's relief from stay order should be vacated because

9   it is in the best interests of **all creditors**, including WFB, to allow the Sanchezes to complete

10  their confirmed plan.

11  **B. THE SANCHEZES SHOULD NOT BE HELD RESPONSIBLE FOR THE BAD LEGAL**
    **ADVICE THEY RECEIVED AND THE RELIEF FROM STAY SHOULD BE VACATED**
12  **PURSUANT TO FRBP 7055 AND 9014, FRCP 55 AND 60 AND LR 9014**
13

14      FRCP 55 is made applicable in bankruptcy proceedings through FRBP 7055.  And

15  FRCP 60 is made applicable through FRCP 55.  The pertinent part of FRCP 60 states: "On

16  motion and upon such terms as are just, the court may relieve a party or a party's legal

17  representative from a final judgment, order, or proceeding for . . . (6) any other reason

18  justifying relief from the operation of the judgment."  Numerous cases throughout the nation

19  have explained the factors to consider when deciding whether to vacate a judgment.  One

20  such case was *United States v. Alongi*, 346 F. Supp. 2d 394 (E.D.N.Y. 2004).  In that case,

21  the Federal government sought monetary damages for the borrower's student loan default.

22  *Id.* at 395.  Mr. Alongi failed to answer the complaint and a default was entered against him.

23  *Id.*  He filed a *pro se* answer after the default and moved to vacate the default pursuant to

24  FRCP 55(c) and 60(b). *Id.*  Part of Mr Alongi's claim was that he sought the advice of a law

25  firm prior to the default but that no one advised him to file any pleadings with the court. *Id.*

26  The court stated that there are three principal factors to consider when deciding a motion to

27

28

1  vacate: 1) whether the default was willful; 2) whether the movant demonstrates a meritorious

2  defense; and, 3) whether vacating the default will prejudice the other party and to what extent.

3  *Id.* The court reasoned that Mr Alongi had not been willful but "was either given the wrong

4  advice or did not understand the advice that the law firm gave him. Upon his learning of the

5  default judgment, the Defendant took immediate action and filed an answer nine days later.

6  Thus, it appears the Defendant did not willfully avoid responding to the lawsuit . . ." *Id.*

7

8       In the case at bar, the Sanchezes sought legal advice as to how to proceed with

9  payments and what needed to be done to answer the RS Motion. They received erroneous

10 legal advice and trusted that it was correct. WFB obtained its unopposed relief as a result.

11 As in the *Alongi* case, the Sanchezes actions were not at all willful. Therefore, the Sanchezes

12 satisfy the first factor.

13

14      In the Ninth Circuit, at least two cases bolster the Sanchezes' request for vacating

15 WFB's relief from stay, *Community Dental Services v. Tani*, 282 F.3d 1164 (9th Cir. 2002)

16 and *In re Avila*, 311 B.R. 81 (Bankr. N.D. Cal. 2004). The *Avila* case is directly on point to

17 consider the reasonable possibility of success. In that case, a lender had been granted relief

18 from stay to post a notice of default and moved the court to proceed with foreclosure of the

19 real property. *Id.* at 82. Its debtor's Chapter 13 plan had been confirmed and provided for

20 payments to the lender. *Id.* The lender did not dispute the debtor's scheduled fair market

21 value of the real property. *Id.* at 83. The lender maintained it lacked adequate protection and

22 that the property was not necessary to an effective reorganization and that the debtor had

23 failed to make post petition mortgage payments. *Id.* The court held that there was adequate

24 protection because the lender had an equity cushion of 40 % and such a cushion made the

25 lack of mortgage payments irrelevant. *Id.* The court noted that the debtor should be afforded

26 the opportunity to protect her equity in the home and that she had made diligent efforts to

27

28

confirm her plan, and to refinance the home. *Id.* at 84. Further, the court held that the real property was necessary for the debtor's reorganization because the real property provided its debtor with an additional source of income, even though her tenant had not made rent payments to her post-petition. *Id.* The court noted that it could reconsider the issues and grant relief if the debtor's circumstances of default, etc. had not changed. *Id.*

In the case at bar, the facts are very similar, if not stronger. In addition to the facts already argued above, the Sanchezes stated the Real Property's fair market value as $500,000 on their schedules and WFB did not dispute that value. The Sanchezes' confirmed plan provides for payments to WFB. WFB has an equity cushion of at least $101,000 (or 20.2 %) and may be as high as $137,000 (or 27.4 %). Further, the Sanchezes' plan payments do not rely on a possible payment from a delinquent tenant but are funded by their steady employment. They have also made a diligent effort to obtain a refinance to pay the arrears. Therefore, the Sanchezes have satisfied the success factor because they have demonstrated a stronger case for success than in *Avila*.

The *Tani* case dealt with an action for trademark infringement. *Tani* 282 F.3d at 1166. Mr Tani's counsel failed to file a timely answer to the complaint and also failed to contact the plaintiff for a court-ordered settlement conference. *Id.* at 1166-67. Mr Tani's counsel represented that the litigation was proceeding smoothly and Mr Tani relied on this representation. *Id.* at 1167. Mr Tani did not learn otherwise until he received the district court's default order, at which time he sought new legal counsel. *Id.* His new attorney filed a motion to vacate the judgment but the district court denied the motion because it reasoned that Mr Tani failed to establish that his former counsel's conduct amounted to extraordinary circumstances under FRCP 60(b)(6) and that Mr Tani had demonstrated his own culpable conduct. *Id.* The Ninth Circuit first stated that FRCP 60(b)(6) justifies relief if the movant

demonstrates extraordinary circumstances beyond his control which prevented the movant from prosecuting his case. *Id.* at 1168.  The court noted that the general rule is that a client is normally responsible for his counsel's ordinary negligence but distinguished the general rule when faced with gross negligence. *Id.*  The Ninth Circuit held that such gross negligence on the part of counsel justifies vacating a default judgment pursuant to FRCP 60(b)(6). *Id.* at 1169.  The court reasoned that the rule is remedial in nature and must be liberally applied. *Id.*  The court also noted that a default judgment is an extreme measure and a case should be decided on its merits. *Id.* at 1170.  The court succinctly stated that:

> Additionally, our holding makes common sense, as is evident from the facts in the case before us.  When an attorney is grossly negligent, as counsel was here, the judicial system loses credibility as well as the appearance of fairness, if the result is that an innocent party is forced to suffer drastic consequences.

*Id.*

Moreover, the court addressed the necessary issue of whether the remedy for gross negligence should be a separate malpractice lawsuit:

> Although such an action is indeed a possibility, it is an insufficient remedy to justify foreclosing the possibility of relief under Rule 60(b)(6). *See Primbs,* 4 Cl.Ct. at 370.  Relief from a malpractice action often comes after substantial delay, if at all, and it increases the amount of litigation in our courts. *See Carter,* 804 F.2d at 808.  Additionally, there is no guarantee that money damages obtained in a malpractice action that results in a verdict years later will serve to alleviate the consequences of the default judgment.  For example, here, the fact that Tani may someday receive an award of about two million dollars in a malpractice action would be of little solace to him, given what he may be required to sacrifice now in order to satisfy so financially onerous a judgment. Being subjected to a judgment in the neighborhood of $2,000,000.00 would be enough to cause many individuals to lose their businesses and their homes, and to effect drastically the educational and other opportunities their spouses and children might otherwise have.  Also, of importance, the "remedy" of a malpractice action does not address the critical issue of the court's order barring Tani from using the name under which he has been operating his business for a number of years. . . . A malpractice action cannot restore retroactively the intangible business benefits that ensue from the continued use of a name that has previously identified a business to the public.  Thus, relief under Rule 60(b)(6) may often constitute the only mechanism for affording a

1
2

client actual and full relief from his counsel's gross negligence-that is, the opportunity to present his case on the merits.

3

*Tani* 282 F.3d at 1171-72.

4

Finally, the Ninth Circuit addressed the district court's finding of Mr Tani's culpable conduct

5

by stating that a proper finding of such conduct would justify denial of a Rule 60(b) motion.

6
7

*Id.* at 1172.  The court found no evidence to support a finding that Mr Tani acted culpably,

8

but, rather, the only evidence in the record supported the fact that the attorneys were the only

9

culpable parties and that Mr Tani should be granted relief from the default. *Id.*

10

In the case at bar, Mr Bonilla's firm failed to properly advise the Sanchezes when

11

asked about the issue of making the mortgage payments.  Any reasonable bankruptcy

12

attorney would advise a client to continue making the mortgage payments.  It is an obvious

13

and glaring error to advise a client otherwise.  The Sanchezes relied on this extremely

14

erroneous advice and did not make the mortgage payments.  Mr Bonilla's firm represented

15

that they would contact WFB and resolve the issues surrounding the returned mortgage

16

payment.  The firm then told the Sanchezes to continue making the mortgage payments and

17

the Sanchezes relied on this advice as an indication that the firm had resolved the returned

18

payment issue.  However, when the Sanchezes received notice of the RS Motion (the logical

19

20

result of the firm's bad advice), they again sought the firm's advice and were told that their

21

lack of mortgage payments meant they had no defense to the RS Motion and that the firm

22

would not file an opposition.  The Sanchezes decided to stop listening to the firm's advice and

23

sought refinancing but failed.  At no point did the Sanchezes act culpably.  Indeed, upon

24

concluding that the firm was giving them bad advice, they tried the proactive approach of

25

26

seeking other funds to cure the arrears.  After failing to secure the funds and after receiving

27

the notice to vacate, they sought the advice of other counsel.  As in *Tani*, this Court should

28

not hold the Sanchezes responsible for their former counsel's poor advice.  Further, this Court should conclude that the Sanchezes' actions were focused on resolving a situation their counsel's advice put them in and were far from culpable.  As in *Tani*, this Court should reject any claim that the Sanchezes' exclusive remedy should be to file a malpractice lawsuit because such a remedy would not restore them to their home.  Therefore, this Court should grant the Sanchezes instant motion and vacate the relief from stay order because of their former counsel's gross negligence, their lack of culpability and their preferred equitable remedy of once again living in their home.

## CONCLUSION

Based on the facts that the Sanchezes received bad legal advice amounting to gross negligence and that denial of the instant motion would inequitably hold them responsible for their former counsel's acts and that the Sanchezes are wholly without fault, the Sanchezes request that the Court:

1)      vacate the prior order granting WFB relief from the stay;

2)      allow them to complete payment to WFB through their confirmed plan;

3)      for such further relief as the Court deems just and proper.

Respectfully submitted,
Pacific Law Center


Date: June 8, 2007                          By: /s/ Ronald M. Toigo, Esq.
                                            Ronald M. Toigo, Esq.